SMITH's executors *against* CHAPMAN's executor:

### IN ERROR.

*A.* died, making *B.*, his wife, and two others, executors, who accepted the trust. During the settlement of *A.'s* estate, *B.* married *C.*; and *C.* as executor in her right, received money belonging to *A.'s* estate, and died, making *D.* his executor. In an action of account, brought by *B.* and her co-executors, against *D.*, it was held, that the plaintiffs had an interest in the subject matter, which entitled them to sue; that the defendant, as the representative of *C.*, was accountable to the surviving executors; and that an action of account was the appropriate remedy.

This was an action of account, brought by *Calvin Pitkin* and *Amelia Pitkin*, his wife, *Simeon Hinman* and *Ashbel Monson*, " the said *Amelia*, while sole, and the said *Simeon* and *Ashbel*, being executors on the estate of *Samuel Smith*, deceased, and the said *Calvin*, since his marriage with the said *Amelia*, joint executor with his said wife, in her right," against *Leveret S. Chapman*, executor on the estate of *Isham Chapman*, deceased. The declaration was as follows: " That to the plaintiffs, as executors aforesaid, the defendant, as executor to the said *Isham*, render his reasonable account for the time the said *Isham* was bailiff and receiver to the plaintiffs: Whereupon the plaintiffs declare and say, that at *Middlebury*, on the first day of *December*, 1809, *Samuel Smith* died, having, by his last will and testament, appointed the said *Amelia*, his wife, and said *Simeon* and *Ashbel* his executors, who then and there proved said will, and accepted the trust as executors; and while said estate was in settlement, and before the same was settled, *viz.* at said *Middlebury*, on the 10th day of *December*, 1812, the said *Amelia* intermarried with said *Isham Chapman*, and by means of said marriage, the said *Isham* became joint executor with the other executors named in said will, in right of his said wife *Amelia*; and the said *Isham*, in pursuance of his said right as executor, entered upon the settlement of the estate of said *Samuel*, and as executor had the care and management of the property and debts due the estate of said *Samuel*, and in right thereof, received large sums of money, and other property, due and belonging to said estate, *viz.* from *Jobamah Gunn* 300 dollars, *Ashbel Monson* 70 dollars, *Simeon Manville* 50 dollars, *Amos Camp* 200 dollars, *Samuel Higby* 20 dollars, *Israel Goodrich* 500 dollars, *John Stone* 50 dollars, *David Wheeler* 50 dollars, *Eden Burchard* 50 dollars, *Hezekiah Clark* 40 dollars, *Larman*

*Townsend* 200 dollars, *James Porter* 40 dollars, *John Bradley* 168 dollars, *David Abbot* 11 dollars, *David Thompson* 7 dollars, *Lamberton Monson* 20 dollars, *William* and *Mary Stillman* 550 dollars, *Ebenezer Smith* 85 dollars, and other persons unknown to the plaintiffs, to the amount of 3000 dollars, for which the said *Isham* has never rendered any account to the other executors, or to the judge of probate ; and on the 10th day of *March*, 1816, the said *Isham* died, having appointed the defendant his executor, and leaving a large balance in his hands due to said *Smith's* estate, unaccounted for, *viz.* the sum of 3000 dollars ; and on the 1st day of *January*, 1817, the defendant undertook the settlement of the estate of said *Isham Chapman*, but the defendant, ever since the death of said *Isham*, has refused, and still does refuse, to render his reasonable account, or to pay said balance, though often requested and demanded : And the plaintiffs further say, that on the 1st day of *June*, 1817, the said *Amelia* intermarried with *Calvin Pitkin*, one of the plaintiffs : And by reason of the defendant's refusal as aforesaid, the plaintiffs, in their said capacity, have been damnified the sum of 3000 dollars ; to recover which, and that the defendant may render his reasonable account, this suit is brought." At the term of the county court, held in *November*, 1820, the parties being called, the defendant was defaulted ; and thereupon the court found, that the said *Isham Chapman*, while in life, was the bailiff and receiver of the plaintiffs, as they, in their declaration, had alleged, and rendered judgment, that the defendant render his reasonable account, and appointed auditors. On the report of auditors, at the next term, the court gave final judgment, that the plaintiffs in their said capacity as executors, recover of the defendant in his said capacity as executor, out of the goods and estate of the said *Isham Chapman*, deceased, in the defendant's hands, the sum of 2358 dollars, 68 cents, damages, and their costs. On a writ of error in the superior court, this judgment was reversed ; whereupon the original plaintiffs brought the present writ of error, praying that the latter judgment might be reversed, and the judgment of the county court affirmed.

*N. Smith* and *B. Bronson*, for the plaintiffs in error, contended, 1. That the plaintiffs, as executors of *Samuel Smith*, were entitled to call for the money in question.

2. That the defendant, as the representative of *Isham Chap-*

man, in whose hands the money was, at the time of his death, was bound to give it up.

3. That the action of acount was the appropriate remedy; and was, of all others, the most favourable to the defendant. 1 *Swift's Dig.* 579. 580. *Mumford* v. *Avery,* Kirby 163. *Pond* v. *Pond,* 2 *Root* 41. *Dickerson* v. *Whittlesey,* 2 *Root* 121. *Com. Dig. tit.* Accompt. A. 2. 3. 4.

4. That the plaintiffs were without remedy, by suit on probate bond; as the defendant's testator, acting in right of his wife, never gave any bond.

*R. S. Baldwin,* for the defendant in error, contended 1. That if *Isham Chapman* had, in his life-time, been liable to account, as the bailiff or receiver of his co-executors, this action does not lie against *his executor.* At common law, account did not lie against an executor, *for want of privity.* Co. *Litt.* 90. *b. Fitz. N. B.* 117. *e. Com. Dig. tit.* Accompt. D.

2. That *Isham Chapman* was not, in his life-time, the bailiff or receiver of the plaintiffs. He did not receive the money specified in the declaration, as the agent, or for the use of his co-executors, nor was he liable to account with them for it. Neither was there any privity between them and him.

3. That those who were interested in the estate of *Smith,* had adequate remedy, without recourse to this action. *Chapman* and his wife, making one executor, were jointly liable, during his life, for all that they received, on her bond to the judge of probate. On his death, she became liable for any *devastavit* by him, and bound to account to the court of probate for all that he had received. The other executors, if they have given separate bonds, have incurred no liability. If they have joined her in the bond, they have become liable, not as executors, but as *sureties,* and may have their remedy, in their private capacity, against her. 1 *Swift's Dig.* 449. 450 And she, perhaps, having become liable for her husband's default, may have relief in chancery against his estate.

*Daggett,* on the same side, declined arguing the case, observing, that he could only repeat, in more words, what had already been said.

Hosmer, Ch. J. The plaintiffs, *Calvin Pitkin* and *Amelia* his wife, *Simeon Hinman* and *Ashbel Monson,* as executors of *Samuel Smith,* brought their action of account before the county

court held at *New-Haven*, against the defendant, as executor of *Isham Chapman*. They commence with the averment, "that to the plaintiffs, as executors aforesaid, the defendant, as executor to said *Isham*, render his reasonable account, for the time the said *Isham* was bailiff and receiver of the plaintiffs." This fact it is necessary to retain, particularly, in remembrance. The plaintiffs' suit has its foundation, solely and exclusively, on the position, that *Isham Chapman* was the bailiff and receiver of the plaintiffs, as executors; and the only point of enquiry, is, whether he was the plaintiffs' bailiff and receiver. To sustain this ground of action, the plaintiffs declare, that *Samuel Smith* aforesaid, by his last will and testament, appointed his wife *Amelia*, (now one of the plaintiffs) and the said *Simeon* and *Ashbel*, his executors, who proved the will, and accepted the trust; that while the state was in settlement, the said *Amelia* married *Isham Chapman* aforesaid, and in pursuance of his right as executor thus acquired, the said *Isham* collected large sums of money due to the estate of *Samuel Smith*, and other personal property; but as no property, except the money collected, is specified in the declaration, the claim of the plaintiffs, by necessary consequence, is limited to the money only. Having alleged, that the said *Isham* received 300 dollars of *Jobamah Gunn*, and other sums of numerous individuals named, amounting in the whole to 3000 dollars, for which, as the declaration avers, " the said *Isham* has never rendered any account to the other executors, or to the judge of probate," the plaintiffs affirm, that the said *Isham* died, having appointed the defendant his executor, who refuses to render his account in the premises. Finally, the plaintiffs aver, that the said *Amelia*, first the wife, and then the executrix, of *Samuel Smith*, then the wife of *Isham Chapman*, has intermarried with *Calvin Pitkin*, one of the plaintiffs, and then demand 3000 dollars damages, and the reasonable account of the defendant. The first judgment on the defendant's default of appearance, was rendered in the following words: " That thereupon this court do find, that the said *Isham Chapman*, while in life, was bailiff and receiver of the plaintiffs;" and on the report of auditors, duly appointed, the court gave final judgment against the defendants, for the recovery of 2,358 dollars, damages, with costs, " out of the goods and estate of the said *Isham Chapman*." This judgment was reversed, by the superior court; and now a writ of error is brought to set aside the latter judgment, and to establish the one rendered by the county court. I have been more than

usually particular, in the statement of the facts in the case; as in my view, their precise force has not been estimated.

Upon the facts before-mentioned, it becomes a question for determination, whether *Isham Chapman* was the plaintiffs' bailiff and receiver.

To sustain the affirmative of this question, it devolves on the plaintiffs to evince the following propositions. First, that their *legal right* has been affected, by the acts of *Isham Chapman*. 1 *Chitt. Plead.* 1. Unless this is supported, the plaintiffs have no title. Secondly, that there rests on the defendant a *legal liability* to their claim. 1 *Chitt. Plead.* 23. In the absence of this affirmation, no matter what the plaintiffs' right is, the defendant is not responsible. Lastly, that *Isham Chapman* was the plaintiffs' *bailiff and receiver*, so that the legal liability, (if there be one) admits of the *remedy* they have resorted to.

In my opinion, neither of the above propositions is true; although on the failure of either of them, the plaintiffs' action cannot be maintained.

Proposition 1st. The plaintiffs, to establish a title, must shew, that their *legal right* has been affected, by the acts of *Isham Chapman.*

I see not on what ground such a position is sustainable. It will not seriously be contended, that the co-executors had right to the estate of the testator in the hands of *Chapman*, who was a joint executor with them, upon the groundless principle, that one executor is bailiff and receiver to another. Neither can it be asserted, as a legal truth, that the *plaintiffs* are under any liability, by reason of *Chapman's devastavit*, or breach of trust; although it is admitted, that *Amelia*, one of the plaintiffs, is; and for the damages resulting from the acts and omissions of her former husband, that she may have adequate redress. Nor on the foundation, that the interest of *Smith's* estate requires it, is it maintainable, that the law has invested the plaintiffs with a right of action against the said *Isham*, or his executor. In the progress of my argument, it will appear, that the interest of the estate is secured, by a plain and adequate legal remedy, with which the plaintiffs have no concern; and that, where at law there is not sufficient redress, a remedy in chancery commensurate with every desirable object, may unquestionably be had. And at the out-set, I cannot refrain from remarking, that the plaintiffs' demand, warranted neither by adjudged cases, nor by established principles, is, so far as my information extends, an entire novelty.

On the subject in question certain principles have been long and incontrovertibly established. The doctrine is laid down in *Toller's Law of Executors and Administrators*, that " a *devastavit* by one executor shall not charge his companion ; and if there be several executors, each shall be liable only for what he receives, provided he hath not intentionally, or otherwise, contributed to the *devastavit* of the other." So, " an executor administering, having once received moneys, assets of his testator, cannot discharge himself under the plea of *plene administravit*, to an action by a bond creditor of his testator, by shewing that he paid the money over to his co-executor, even for the purpose of satisfying the bond creditor, who had applied for payment to such co-executor ; if the co-executor afterwards misapplied the money, by retaining it, to satisfy his own debt." *Toll. Ex.* 430. The reason is given, by Lord *Ellenborough*, in *Crosse* v. *Smith* & al. 7 *East*, 246. 258. in which case he says : " It never has been made a doubt, in any case at law, that if money has, in the language of the plea, *come to the executor's hands to be administered*, that it must also have been in fact applied by him in a due course of administration, in order to his discharge." " In conformity, therefore, to the rules of law, as handed down to us, in respect to executors, we are obliged to pronounce that the defendant *Smith*, having once received and fully had under his controul assets of the testator applicable to the payment of his bond debt, was responsible for the application thereof to that purpose ; and such application having been disappointed, by the misconduct of his co-executor, whom he employed to make the payment in question, he is liable for the consequences of such misconduct, as much as if the misapplication had been made, by any other agent of a less accredited and inferior description." 7 *East* 259. The application of the above principle to the case under discussion, is both obvious and perfect. *Isham Chapman* and *Amelia* his wife, who is responsible for all his acts, he having had money in his possession to be administered, were bound to apply it in a due course of administration ; nor could they be exonerated, by the payment of the money to the other executors, because they had not the right to demand it, nor was it the duty of *Chapman* to pay it. The co-executors were subjected to no liability for his acts or omissions, but merely for their own. In *Hargthorpe* v. *Milforth, Cro. Eliz.* 318. it was adjudged, " that one co-executor shall not be charged, by the *devastavit* made by his companion ; for the act of one executor shall charge the other

*New-Haven,*
July,
1823.

Smith
*v.*
Chapman.

no further than the goods of the testator in his hands amount to, but not to charge him of his own goods ; for it was the folly of the testator to put such trust in one, that would do such acts to his disadvantage; but the acts of one shall not hurt the other, for their own goods." In support of the principles advanced, so far as I have knowledge, the cases, without exception, are uniform. *Dyer* 210. *a. Elwell* v. *Quash* & al. 1 *Stra.* 20. *Baldwin* v. *Church,* cited, *ibid.* In the case of *Douglass* v. *Satterlee,* 11 *Johns. Rep.* 16. it was said, by *Kent,* Ch. J. in delivering the opinion of the court, " The rule is settled, that one executor is not chargeable with the *devastavit,* or other act, of his companion, and is only chargeable with assets, which came to his hands. When assets have once come to his possession, he is answerable for the due administration of them, even if he deliver them over to his co-executor." The same principle is applicable equally to trustees, executors or guardians. In *Monell* & al. v. *Monell* & al. 5 *Johns. Chan. Rep.* 283. it was adjudged, by the late learned Chancellor of the state of *New-York,* that if by any act or agreement of one trustee or executor, money gets into the hands of his co-trustee or co-executor, both are answerable for it. But, this case, founded on numerous decisions, which are cited, wholly negatives the supposition, that one trustee or executor, is responsible for the separate acts of the other. Absurd would be that system of laws, for its inconsistency, which should render an executor liable to administer the assets, which came to his hands, so that the delivery of them to a co-executor would be no exoneration ; and yet, which should, in any event, make him responsible for them to his co-executors, as their bailiff and receiver. The law long since established, and which has continued unaltered to the present moment, speaks no such language.

It has been said, that during the life of *Isham Chapman,* the co-executors had no right to the assets in his hands ; but, on his death, that all the executors of *Samuel Smith* had a good title against *Chapman's* executor. This assertion is manifestly unfounded, and proceeds on the supposition, that either the right existed, but the remedy was wanting, before *Chapmans's* death ; or that the right and remedy came into existence immediately after that event. Now, the former part of this supposition is too groundless to require any answer: and the latter branch of it misconceives the reason of his non-liability, while living. The reason is, that the law subjected him to administer the assets, which came to his possession, and never, either before or after

his death, put the plaintiffs under this obligation. If they were not duly administered by *Chapman*, his wife *Amelia* became responsible, and her bond to the judge of probate is broken ; a topic on which I shall more particularly insist, in a subsequent part of my argument. I, however, will observe, that the only right on which the plaintiffs' action is founded, is one which existed before the death of *Chapman*, and is said to have rendered him the bailiff and receiver of the plaintiffs ; so that a right commencing its origin after his death, if such there were, would not sustain the present action.

It has been asked, what, if an executor die, or is removed, are the rights of the executors remaining ? In the former event, to the specific property belonging to the estate of the testator, the executors will have title, and may take it into their possession ; and to the moneys collected they will have no title, but if not duly administered, the administration bond will have become violated, and upon this there is a competent remedy. In the event of a removal, the statute (*p.* 205.) has prescribed, that the property unadministered shall be delivered to the existing executors or administrators. These principles have no relevancy to the case before the court, neither illustrating nor enforcing the matter in controversy.

If, then, the plaintiffs claim by virtue of a right in the co-executors, it is too groundless to require discussion ; and if the right contended for, is founded on the legal title of all the executors, they have no such title, and are only obliged to administer the assets, which have come into their hands. During the life of *Chapman*, within which period the action is laid, the plaintiffs, neither separately nor conjunctively, had any right to the assets in his hands, but the responsibility rested exclusively on *Amelia*, by virtue of her bond.

Finally, if it be said, that the plaintiffs have a legal title, for the benefit of the testator's estate ; I reply, that the estate has no interest in the question under discussion ; a different and unquestionable remedy existing in favour of the judge of probate.

I conclude, then, that no legal right of the plaintiffs has been affected, by the acts of *Isham Chapman*.

Proposition 2nd. The plaintiffs are bound to shew, that there rests on the defendant *a legal liability* to their claim.

The proposition, that there is at law a liability to the plaintiffs' claim, has never been sustained, by any decided case, nor is it sustainable on any established principle. The answer to it

has, already, been anticipated. For the moneys collected by *Chapman*, and not administered by him, the legal liability was, not to the plaintiffs, but to the judge of probate on the administration bond.

By the marriage of *Amelia*, now one of the plaintiffs, with *Chapman*, he was invested with a right to administer, with, or without, her consent. *Toll. Ex.* 358. *lib.* 3 *cap.* 5. If a *feme covert* be executrix or administratix, administration by her husband binds her; (*Com. Dig.* tit. Administration. D.) and if he waste the goods, it will be a *devastavit* in the wife; for it was her folly to take such an husband, who would make a *devastavit. Vaughan* v. *Thompson, Dyer* 210. *a.* n. *Mounson* v. *Bourn, Cro. Car.* 519. *Horsey* v. *Daniel*, 2 *Lev.* 145. Whether the husband waste the assets, or omit to administer them, the wife is equally responsible; because his acts, in law, are considered as being hers. This responsibility, however, is not to the executors, but to the court of probate, upon the bond given to secure a faithful administration. It is a very strange novelty, that a suit at law should be brought against the executor of the husband, by the wife, who is the only person legally liable in respect to the matter in demand. The proposition, that the defendant is responsible, indispensible as it is to the support of the plaintiffs' action, is utterly destitute of any foundation.

Proposition 3rd. If the plaintiffs had sustained their legal right, and the legal liability of the defendant, they must likewise shew the propriety of the *remedy* resorted to, to wit, that *Chapman* was their *bailiff and receiver*, while in life; and that, on this basis, the defendant is suable in an action of *account*. This, be it repeated, is the ground, on which, in their declaration, they have placed their right to recover, and, in fact, did recover. To sustain this position, the plaintiffs have not advanced, nor can they advance, a single step. *Chapman* never was bailiff and receiver of the executors, excluding his wife, nor of the executors generally. He was an executor, in right of his wife, jointly with the plaintiffs; and his omission to administer faithfully, was her omission.

An action of account lies, at common law, only against a man as guardian, bailiff, or receiver; (*Com. Dig.* tit. Accompt. A. 1. *Co. Litt.* 172. *a.* 2 *Co. Inst.* 379. 1 *Rol.* 117. *l.* 43.) or, in favour of trade, by one merchant against another. The first and last of the above instances put, have no bearing on this case. It only remains to enquire, whether *Isham Chapman* was the plaintiffs' *bailiff* or *receiver*. A bailiff is one, who hath admin-

istration of lands, goods and chattels, to make the best benefit for the owner. *Co. Litt.* 172. *a.* And a receiver is one, who receives money to the use of another. *Com. Dig. tit.* Accompt. A. 4. Now, that *Chapman* was not the bailiff or receiver of the plaintiffs, within the above definitions, has been abundantly shewn, in the course of my observations. This proposition may, likewise, be evinced, on a principle hitherto not advanced. To constitute a person bailiff or receiver, there must be a privity in deed between the parties, or a privity in law. It has not been, and cannot be affirmed, with any plausibility, that between the parties there ever existed a privity in deed. Whether there was a privity in law, is easily ascertained, by a recurrence to the cases on this subject. If *A.* receive all the debts of a testator, without authority, the executor shall not have an action of account against him. 1 *Rol.* 117. *l.* 55. So, if the bailiff and receiver of *A.* make a deputy, *A.* shall not have account against him ; or if *A.* act as a guardian, and employ *B.* to receive the profits and rents of the infant for him ; yet the infant shall not have an account against *B.,* who was only servant of *A. ;* and because there was *no privity* between him and the infant. *Fitzh. N. B.* 119. *b.* 1 *Rol.* 118. *l.* 5. If administration be granted during the minority of an executor, he shall not have account against the administrator, at his full age ; and for the reason just expressed. 1 *Ander.* 34. And, to close the citations on this head, if one executor take the whole estate of the testator, account does not lie against him; for one may take and dispose of the whole, and there is no privity of receipt between them. 1 *Rol.* 117. *l.*—118. *l.* 10. I shall not pause to apply the preceding cases, the two last of which are in point against the plaintiffs, and all of them demonstrate, with perfect clearness, what privity in law is, and that there was no such privity between the plaintiffs and *Chapman.* I shall only remark, in general, that there is no foundation for the assertion, that *Isham Chapman* was the bailiff or receiver of the plaintiffs, by privity in deed; and that, in legal contemplation, there are no acts, from which a privity in law can be inferred. The law neither pronounces, that *Chapman* received money *to the use* of the plaintiffs, nor that, from the relation between them, he was their bailiff and receiver.

No inference from the law established in the action for money had and received, can be deduced and applied to the action of account. The action for money had and received is not founded on privity of contract, but may be maintained where

*New-Haven,*
July,
1823.

Smith
*v.*
Chapman.

New-Haven,
July,
1823.

Smith
v.
Chapman.

no privity has existed.  It lies against the finder of money lost ; or obtained by fraud or deceit ; and in a great variety of cases, where the foundation of the suit is merely a tort, if *ex æquo et bono* the plaintiff ought to recover.  (*Vid.* cases in appendix to 1 *Cranch,* note A.  *Pierce* v. *Crafts,* 12 *Johns. Rep.* 90.)  But, without privity in deed or in law, the action of account cannot be sustained.

The case of *Adair* v. *Shaw,* 1 *Scho. & Lef.* 243. decided by the learned Chancellor, Lord *Redesdale,* is too material to be omitted.  One *Charles Crymble* devised property, real and personal, and directed the latter to be invested in certain lands. The executors having declined to act, administration was granted to *Anne Shaw,* the wife of *Francis Shaw,* and the trust having been accepted, the said *Francis Shaw,* instead of making an investment of the money, according to the will, paid it to one *Charles Crymble,* the younger, in breach of the trust.  *Thomas B. Adair,* who claimed title to the investment of the money, brought his bill against *Shaw* and wife, praying an account of the testator's personal estate, and an application of the *residuum* after the payment of debts and legacies, pursuant to the will. It was said, by the Lord Chancellor, " I think there can be no doubt that Mrs. *Shaw* is responsible, and that the assets of Mr. *Shaw* are responsible to this extent, *viz.* Mrs. *Shaw* for the whole, and Mr. *Shaw's* assets for whatever came into his hands." *P.* 255. First, as to Mrs. *Shaw.*  It is said, that there can be no demand against her, because she was a *feme covert* when administration was taken, and a feme covert is not chargeable with the waste of her husband, when no act has been done by her during the coverture.  But I think, upon all the authorities, that position is a mistake.  I can find no ground for it, except a sort of *dictum* by Lord *Thurlow,* in the case of *Beynon* v. *Gollins,* 2 *Bro. Ch. Ca.* 323." *P.* 257.  The case next establishes the point, that a feme covert executing shall be answerable to creditors after the coverture, for waste committed by her husband, during the coverture.  " All the cases, it seems to me, (said the Lord Chancellor) clearly lay down, that though the waste during the coverture, is the act of the husband, yet it is an act for which the wife, after the determination of the coverture, is responsible, because, according to the language of the cases, it was her folly to take a husband, that would so misconduct himself.  Indeed, no action would lie against the representatives of the husband for the debt, because he was not the debtor.  The judgment must be against the assets of the testa-

ter, and the *devastavit* is a mere consequence of that judgment." P. 258, 9. The case next affirms, that the law has no form of action, by which the assets of the husband of a feme executing are chargeable for a *devastavit*, committed by him, during the coverture ; but that equity will relieve in such case, on the principle, that the property came into the husband's possession, *bound by a trust*. The Lord Chancellor then remarks : "If the property, which was handed over to *Crymble* the younger, had remained in the hands of *Francis Shaw*, at the time of his death, and was now *in specie* in the hands of his executor, the plaintiff could bring an action of *detinue* or *trover* ; but in consequence of the property being converted, *in the lifetime of Shaw*, the mode of action at law is wanting ; the law has not provided a form of action, by which the right, which the law acknowledges, can be enforced." P. 262.

The principles advanced in the case above stated, established as they are, by numerous decisions, and sanctioned by the weighty opinion of Lord *Redesdale*, are indisputable ; and their application to the present case, that as against *Isham Chapman*, or his executor, the plaintiffs have no right of action, is obvious and direct. Other objections to the claim set up by the plaintiffs, were made in the argument of the case ; but it is unnecessary to proceed further.

It is my conclusion in the case before the court, 1. That the plaintiffs have *no legal right*, which has been invaded, by the acts of *Isham Chapman*. 2. That there rests on the defendant *no legal liability* to the plaintiffs' claim. 3. That *Isham Chapman* never was their *bailiff* or *receiver*, nor is the defendant. 4. That the *legal obligation* for the omission duly to administer the moneys, which came to the hands of *Chapman*, rests on *Amelia Pitkin*, one of the plaintiffs. And lastly, that having first settled the demand against her, by virtue of her bond to the judge of probate, she will have remedy in equity against the assets of her late husband ; and in the event of the insolvency of herself, and her obligors, the same remedy may be followed, by the judge of probate, and perhaps, by the executors of *Smith*.

CHAPMAN, J. The defendant admits, that he has in his hands a large sum of money and other property, belonging to the estate of *Samuel Smith*, deceased, which he has no right to detain from his representatives, and yet insists, that the plaintiffs, the executors of *Smith*, by no process of law whatever, can call it

out of his hands, or compel him to account for it, or at least, cannot do so in this form of action. I will consider the objections in their order.

1. The remedy (if any) is on the probate bond ; or, in other words, the plaintiffs can borrow the name of the judge of probate, and bring a suit against themselves, and, in this way, compel themselves to account for moneys &c. which are in the hands of the defendant, and for which he ought to account somewhere. On the bond, they can sue no person but themselves ; as neither the defendant, nor his testator, ever executed it.

2. But, as it is admitted, that an executor cannot sue his companion, in this action, it is claimed, that it follows, that a suit cannot be maintained against his executor.

A slight attention to the reasons, which exempt him from a liability of being sued by his co-executor, in this action, will satisfy any person, that there is nothing in the argument drawn from any supposed analogy in the cases. An executor is not liable to account with his co-executor, because he is under an equal obligation to execute the will with his companion ; and to enable him to discharge the obligation, he has a right to detain the property. The rights of all executors are equal, as well as their obligations ; and to maintain an action, the plaintiff must shew a paramount right. He is also liable to be called upon, by the judge of probate, to account. Neither of these reasons, can be alleged, by the defendant, in this case. He is under no obligation to execute the will, to pay the debts of *Smith*, nor to account with the judge of probate. Why, then, should he not account for the property, which belonged to the estate of *Smith*, which came into the hands of his testator, and for which he ought to have accounted to the judge of probate at least, and would be liable now to do so, were he in life ? If the reasons above alleged exempted the co-executor, it would seem, that when they no longer existed, they could no longer be used as forming an objection to maintaining the suit. And what would seem to be decisive, on this point, is, that when an executor is removed, he becomes immediately liable to account with the remaining executors, for the property which came into his hands while executor.

3. The plaintiffs, it is said, have no interest in the suit ; one executor not being liable for the *devastavit* of another ; and hence, it is inferred, that the surviving executors are not bound to pay debts or legacies, beyond the amount which came into their hands. This is not even the common law rule. They

*New-Haven,*
July,
1823.

Smith
*v.*
Chapman.

are bound to the extent of the assets, which, by the use of due diligence, might have come into their hands. It is, therefore, begging the question, to say, they have no interest. There is here no question respecting a *devastavit.* The deceased received all the sums, which came into his hands, lawfully, and conducted lawfully with them; but the right of longer detaining them having ceased, the plaintiffs claim that the defendant, as his representative, should do, what the deceased could have been compelled to do, had he, in his life time been removed.

4. Is account the proper action? If any action at law will lie, this is, assuredly, the appropriate action. It is not only most favourable for the defendant, but, in my opinion, is the only one which will lie. The defendant has a right to set off all such sums as the deceased disbursed in his life time, for the benefit of the estate, as well as such sum, as he was entitled to, for his services in executing the will. He has also a right to the evidence of the plaintiffs to assist him to account. The subject matter is strictly a matter of account.

5. It is objected, that if any suit at law will lie, it must be brought by the widow of the deceased, in whose right he was executor; because as he derived all his rights as executor from her, on his decease, they must survive to her. This by no means follows. When his right ceased, it survived to all the executors jointly. This may be tested, by supposing the effects which came into his hands, now remained in specie, in the hands of the defendant. In that case, can it be doubted, that all the executors must join in a suit to remove it, whatever the *form* of the action might be? That she could not maintain the action in her private capacity, is very apparent; because she has no interest, but as executor. There are cases, indeed, where an executor may sue, when the judgment recovered would be assets in his hands; but those cases form exceptions to the general rule. A special promise, made by a vendee of property belonging to the estate, might enable the executor to whom the promise was made, to maintain an action, in his private capacity; but certainly, as a general rule, all the executors, both in law and equity, must join, in all suits where the judgment would be assets in their hands.

6. The only remedy, it is further objected, is in equity, let who will sue. I admit, that a bill in equity will lie; for in most matters of account, courts of law and equity have a concurrent jurisdiction; but I deny there is any thing, in this case, which calls for the interposition of a court of equity, which does not

New-Haven,
July,
1823.

Smith
v.
Chapman.

exist in every action of account. The claim of the plaintiffs is a legal one. Not a single objection has been urged against the present action, which would not have equal weight against a bill in equity for an account. If the suit should have been on the probate bond; if one executor is not accountable to his co-executor; if the plaintiffs have no interest in the subject matter; or if the defendant is accountable only to the judge of probate: If, I say, these form objections to a recovery, in the action in question, they would equally do so, in a bill in equity.

I am, therefore, of opinion, there is manifest error in the judgment of the superior court.

PETERS and BRISTOL, Js. were of the same opinion.

BRAINARD, J. not having been present when the case was argued, gave no opinion.

Judgment reversed.